IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MISTI LEA GARTZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | CIVIL ACTION<br><br>No. 15-9938-JWL |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB and SSI benefits, alleging disability beginning October 20, 2012. (R. 12, 138, 145). At the ALJ hearing, Plaintiff alleged a closed period of disability between October 20, 2012 and November 1, 2013. (R. 31). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in evaluating Plaintiff's allegations of symptoms and in weighing the opinion evidence of a treating medical source, a non-examining medical source and a nurse-practitioner.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process--determining whether, in light of the RFC assessed, claimant can perform her past relevant work; and, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's decision.

## II. Discussion

In his step two analysis, the ALJ found that "the medical evidence does not support a disabling condition that would have precluded work for 12 months." (R. 14). Thereby he determined that Plaintiff's condition did not meet the duration requirement of 20 C.F.R. §§ 404.1509, 416.909 ("your impairment . . . must have lasted or must be expected to last 12 months"); see also 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (at step two a severe impairment or combination of severe impairments that does not meet the duration requirement is not disabling); 20 C.F.R. §§ 404.1505, 419.905 (defining disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

4

death or which has lasted or can be expected to last for a continuous period of not less than 12 months").

The record demonstrates, and both parties appear to agree that when Plaintiff broke her leg on October 20, 2012 she became unable to perform any substantial gainful activity, and that inability continued until, or at least reemerged, in January 2013 when the hardware in her leg broke and had to be surgically replaced. Even assuming, without deciding, that Plaintiff's inability to perform any substantial gainful activity continued through those two periods of time, if she recovered sufficiently to perform any substantial gainful activity in the economy within a year, she did not meet the duration requirement, and could not be found disabled for the closed period from October 20, 2012 through November 1, 2013. Plaintiff argues that she was unable to perform substantial gainful activity for the closed period noted above, and the Commissioner argues that she became able to perform substantial gainful activity during that period.

The court considers each error alleged by Plaintiff and finds no basis for remand.

### A.    The ALJ's Credibility Determination

Plaintiff argues that the ALJ erred as a matter of fact in his credibility determination when he found that Plaintiff was able to care for her two children during the closed period and that Dr. Maguire did not indicate that Plaintiff needed to elevate her legs. (Pl. Br. 11-12). And she argues the ALJ erred as a matter of law when he found that other than the surgical repairs to her broken leg and the broken hardware, her treatment was conservative, and that her failure to seek treatment for six months after

October of 2013 suggested her symptoms were not as disabling as alleged. Id. at 12-13 (citing Soc. Sec. Ruling (SSR) 16-3p[2]). The Commissioner argues that the ALJ reasonably determined the credibility of Plaintiff's allegations of symptoms. She argues that Plaintiff misunderstands the ALJ's finding regarding elevating Plaintiff's legs, and points to record evidence which in her view supports the ALJ's credibility determination. (Comm'r Br. 4-6).

The court's review of credibility determinations is deferential. They are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing an ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173.

---

[2]SSR 16-3p was effective March 16, 2016. The decision at issue is dated September 18, 2014. (R. 19). That SSR was not the law applicable in this case. Therefore, the ALJ could not, and the court will not apply that SSR in this case.

Because the court's review must begin with the decision at issue and involves consideration whether that decision is supported by substantial evidence in the record as a whole, and because the parties both seem to have missed the significance of the credibility determination in context in this case, the court finds it useful to quote the ALJ's entire rationale in which he found Plaintiff's allegations are not credible.

> Overall, the claimant's allegations are not credible. She fractured two bones in her lower right leg but she did not experience an open fracture and she had no neurologic problems at the time of injury. She was subsequently treated with two surgeries, which were performed without complication, and post-surgical records show continued improvement. She did experience some ongoing pain and swelling but she had only trace edema by mid-2013 and she was exercising at the gym regularly. Exams were largely unremarkable by mid-2013 as well, and significant swelling was only noted with prolonged standing or walking. In fact, severe swelling was never present during clinical visits although the claimant walked into the exams.
>
> She also continued to be the primary care taker for two young children during this period. Her Function Report is given little weight overall as it was completed shortly after surgery and, thus, represents her functional capacity during her worst period. (Ex. 2E [(R. 170-79)]).
>
> The undersigned also notes that her allegations at the hearing were not substantiated by the record during the requested closed period. By way of example, Dr. Maguire never noted that the claimant alleged she needed to elevate her leg 3-4 hours and he never opined that this was necessary. She reported needing crutches and a walker 4-5 months after her second surgery but this is not consistent with post-surgical notes. Sleep problems also were not reported or treated. Overall, this suggests exaggeration.
>
> Additionally, aside from surgeries, which were performed early during the requested closed period, the claimant's care was conservative, consisting of medication management and conservative treatment measures (e.g., shoe inserts & compression socks) to alleviate swelling and foot discomfort.

7

(R. 17). The evidence upon which the ALJ relied in reaching his credibility determination was summarized and cited on the previous page of his decision, and the court finds it is a fair summarization of the record evidence. (R. 16).

Plaintiff takes a different view, but much of her view is not supported by the record evidence, as will be discussed below. To the extent that portions of her view are supported by the record evidence, the court notes that the mere fact that there is evidence which might support a finding contrary to that of the ALJ will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

With regard to elevating her leg, Plaintiff ignores the ALJ's finding that Dr. Maguire "never noted" that Plaintiff asserted a need to elevate her leg 3-4 hours and never opined that it was necessary to do so, and argues that in March 2013 Dr. Maguire noted Plaintiff's report that she "continued to get swelling toward the end of the day which would go away after she propped her foot up," and that on December 22, 2012 Plaintiff was instructed to elevate her leg and to avoid standing in one place for a long time. (Pl. Br. 11-12). Plaintiff is correct in her citation to the record, but her argument supports rather than belies the ALJ's finding. The December, 2012 treatment note cited

8

by Plaintiff relates to an emergency department visit by Plaintiff just two months after her leg was first broken and surgically repaired, and just three days after she had finished a ten-day course of antibiotics. (R. 240). And, the treatment notes specifically state, "Exam and lab work is not indicative of on-going infection. Findings more suggestive of <u>not well fit walking boot</u>. Swelling <u>also</u> likely a result of <u>increased walking activity</u> over past 3 weeks." (R. 241) (emphases added). Moreover, the hardware used to repair Plaintiff's foot broke in January 2013 requiring surgical repair once again. (R. 366-67).

      The ALJ specifically cited Dr. Maguire's treatment notes which showed improvement. (R. 16). In March 2013, Dr. Maguire stated, "There is no swelling." (R. 361). In April, she was out of the boot, and in May, Dr. Maguire reported she "seems to be getting better and better," she "has been going to the gym and working out," she "does get swelling toward the end of the day," and he noted that on his physical examination "there is not really much swelling or edema today." (R. 359-60). In August, Dr. Maguire noted Plaintiff's report that she "does not seem to be having quite as much swelling." (R. 358). In September he noted Plaintiff's report of "some pain and swelling at the fracture site." (R. 357). In his final treatment note on October 10, 2013, Dr. Maguire noted Plaintiff's report that "[i]f she is up on her feet for any period of time, then it swells and becomes very uncomfortable. I don't think she is going to be able to do any sort of work that requires prolonged standing and walking. I think she might be able to get back to something that's more sedentary." (R. 355).

9

As the ALJ found, Dr. Maguire's notes do not reveal that Plaintiff reported needing to elevate her foot 3-4 hours or that Dr. Maguire provided such an opinion. Moreover, instructions to elevate her leg in December 2012 shortly after Plaintiff's surgery, after an acute incident requiring an emergency department visit and before another surgery does not suggest that Plaintiff was required to elevate her leg three to four hours every day, especially several months later after recovery from the surgical repair.

While Plaintiff suggests that two surgeries in the course of a year is not conservative treatment, she again misses the point of the ALJ's finding that other than the surgical repairs to her broken leg, the remaining treatment was conservative, particularly after March 2013. Giving the ALJ's credibility analysis due deference, Plaintiff has shown no error.

**B.** **Opinion Evidence**

The ALJ accorded significant weight to Dr. Maguire's opinion that Plaintiff is limited to sedentary work and cannot engage in prolonged standing and walking. (R. 17). He accorded great weight to Dr. Parsons's opinion that Plaintiff would be capable of sedentary work within a year from the original break of her leg. (R. 17); see also (R. 75, 84). And, he accorded no weight to the opinion letter submitted by Ms. Frick, APRN (Advanced Practice Registered Nurse). (R. 17): see also (R. 353).

Plaintiff alleges error in the evaluation of each of these opinions. She argues that given Dr. Maguire's prohibition of prolonged standing and walking "Plaintiff cannot perform the 2 hours of walking and/or standing required by the ALJ's RFC. (Pl. Br. 13).

She argues that Dr. Parsons's opinion stated limitations expected 12 months after Plaintiff's onset and is consistent with a closed period of disability. She also argues that as the opinion of a state agency medical consultant Dr. Parsons's opinion is of suspect reliability, and he did not have all of the "pertinent evidence" including Dr. Maguire's and Ms. Frick's opinions when he formulated his opinion. Id. at 14. She argues that discounting Ms. Frick's opinion because she is not an acceptable medical source is not a proper legal basis and contrary to the ALJ's findings, Ms. Frick's opinion is consistent with Dr. Maguire's opinion. Id. at 14-15.

"Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2017). A physician or psychologist who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of non-treating sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler,

814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, it is still entitled to deference and must be weighed using the regulatory factors in 20 C.F.R. § 404.1527 and 416.927. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated SSR 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2017). In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id. Rulings, 330-31.

SSR 06-3p explains that such opinions will also be evaluated using the regulatory factors for evaluating medical opinions; id. at 331-32 (citing 20 C.F.R. §§ 404.1527, 416.927); and explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

The ALJ applied this legal standard, and the court finds no error in his evaluation of the opinion evidence. He recognized that Dr. Maguire is a treating source, and accorded his opinion significant weight. Plaintiff's argument that the ALJ erred in evaluating Dr. Maguire's opinion misunderstands the definition of sedentary work in the Social Security disability context and is therefore without merit. In the Social Security regulations, work is still defined as sedentary "if walking and standing are required

13

occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). The regulation explain that this is so because even though "a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary." Id. The Social Security Administration (SSA) has explained that "occasionally" in the context of sedentary work means "occurring from very little up to one-third of the time," and that "at the sedentary level of exertion, periods of standing or walking should generally <u>total</u> no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." [1983-1991] West's Soc. Sec. Rep. Serv., Rulings 29 (1992) (emphasis added). This is the standard the ALJ used, and he specifically found that Plaintiff could stand or walk 2 hours throughout <u>an 8-hour workday</u> and sit 6 hours throughout an 8-hour workday. (R. 15). Plaintiff cites no authority for the proposition that standing or walking for 2 hours <u>total</u> throughout an 8-hour workday would involve <u>prolonged</u> sitting or standing, or that any of the representative jobs relied upon by the ALJ require prolonged sitting or standing. Plaintiff's assertion that the "ALJ did not allow for any breaking up of the 2 hours of walking and/or standing" (Pl. Br. 13) ignores that the very definition of sedentary work requires the "breaking up" of the 2 hours of walking and standing over the course of an 8-hour workday. The court will not accept the unsupported assumption that <u>any</u> sedentary job could require standing and/or walking for a prolonged period (even 30 minutes) at one time, and it certainly will not assume that the jobs relied upon by the ALJ conflict with

14

his agreement with Dr. Maguire's opinion that Plaintiff cannot stand or walk for a prolonged period. The ALJ did not err in weighing Dr. Maguire's opinion.

Nor did the ALJ err in weighing Ms. Frick's opinion. The ALJ specifically stated that he had considered the "opinion evidence in accordance with the requirements of . . . SSR[] . . . 06-3p." (R. 15). The court's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter," and Plaintiff does not provide a basis for departing from the general practice. Hackett, 395 F.3d at 1172-73. The ALJ considered Ms. Frick's opinion in accordance with the regulatory factors and determined that it was unworthy of weight because Ms. Frick is not an acceptable medical source and because her opinion is not consistent with the record including Dr. Maguire's treatment notes and Ms. Frick's own report of only minimal swelling when she examined Plaintiff. (R. 17). The record evidence supports the ALJ's finding, and the court may not reweigh the evidence and substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. While it is true the opinion of an "other" medical source such as Ms. Frick may not be discounted merely because she is not an acceptable medical source, the ALJ did not do that here. That was but one basis for his decision, and he also noted, and supported, that her opinion was inconsistent with the treatment notes of an acceptable medical source who was also a treating source, and was inconsistent with her own examination of Plaintiff. That is a sufficient basis.

Finally, the court finds no error in the ALJ's evaluation of Dr. Parsons's opinion. First, contrary to Plaintiff's assertion, Dr. Parsons's opinion is not consistent with a

15

closed period of disability because Dr. Parsons specifically opined, "by end of duration (10/2013) she will be capable of Sedentary [sic] levels of work." (R. 75, 84). Thus, just as did the ALJ, Dr. Parsons concluded that the medical evidence does not support that Plaintiff's medical condition would preclude work for twelve months–it was a denial because Plaintiff's condition does not meet the duration requirement. Although Dr. Parsons's opinion was formed without the benefit of Ms. Frick's opinion, or Dr. Maguire's treatment notes after April 2013, he did have the benefit of Dr. Maguire's earlier treatment notes, and specifically noted that x-rays on March 13, 2013 showed bone formation, and on April 25, 2013, Dr. Maguire reported Plaintiff was doing much better, that she was "out of the boot," and "walks today without much of a limp." (R. 75, 84). Moreover, it is the ALJ's responsibility to evaluate the opinion evidence and assess RFC, and he reviewed all of the evidence--which indicated that Plaintiff's recovery proceeded in accordance with Dr. Parsons's expectations--and he reached the same conclusion.

Plaintiff has shown no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 19th day of September 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**